1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   **VAROOJE AZIZIAN,**                    )    NO. CV 05-07744-MAN
                                             )
12                    **Plaintiff,**         )
                                             )    **MEMORANDUM OPINION**
13            **v.**                         )
                                             )    **AND ORDER**
14   **MICHAEL J. ASTRUE,**                  )
     **Commissioner of the**                 )
15   **Social Security Administration,**     )
                                             )
16                    **Defendant.**         )
     _____)

17

18        Plaintiff filed a Complaint on November 2, 2005, seeking review of

19   the denial by the Social Security Commissioner ("Commissioner")[1] of

20   Plaintiff's claim for supplemental security income benefits ("SSI").  On

21   November 28, 2005, the parties consented to proceed before the

22   undersigned United States Magistrate Judge, pursuant to 28 U.S.C. §

23   636(c).  The parties filed a Joint Stipulation on July 7, 2006, in

24   which:  Plaintiff seeks an order reversing the Commissioner's decision

25

26        [1]Michael J. Astrue became the Commissioner of the Social Security
     Administration on February 12, 2007.  Pursuant to Rule 25(d)(1) of the
27   Federal Rules of Civil Procedure, Michael Astrue should be substituted
     in place of Commissioner Joanne B. Barnhart as the Defendant in this
28   action.  No further action need be taken to continue this suit by reason
     of the last sentence of Section 205(g) of the Social Security Act, 42
     U.S.C. § 405(g).

1  and directing the payment of benefits; and Defendant requests that the
2  Commissioner's decision be affirmed.  The Court has taken the parties'
3  Joint Stipulation under submission without oral argument.

4
5                    **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**
6
7       Plaintiff filed an application for SSI on August 8, 2001.
8  (Administrative Record ("A.R.") 64-66.)  Plaintiff claims to have been
9  disabled since December 27, 1998, due to degenerative spondylosis and
10 disc disease, lumbar spine disease, left knee degenerative
11 osteoarthritis, chest pain, left axis deviation, high blood pressure,
12 pain in the left shoulder, dizziness, bilateral leg weakness, numbness
13 in the arms and fingers, and mental problems.  (A.R. 64, 73.)  He has
14 past relevant work experience as an auto mechanic helper.  (A.R. 74, 94)

15
16      The Commissioner denied Plaintiff's SSI claim initially and upon
17 reconsideration.  (A.R. 24-35.)  On August 5, 2004, Plaintiff, who was
18 represented by counsel, testified at a hearing before Administrative Law
19 Judge Lawrence Wheeler ("ALJ").  (A.R. 265-315.)  On October 29, 2004,
20 the ALJ denied Plaintiff's request for SSI, and the Appeals Council
21 subsequently denied Plaintiff's request for review of the ALJ's
22 decision.  (A.R. 17-23, 4-6.)

23
24                    **SUMMARY OF ADMINISTRATIVE DECISION**
25
26      In his October 29, 2004 written decision, the ALJ found that
27 Plaintiff has not engaged in substantial gainful activity since 1998.
28 (A.R. 18, 22.)  The ALJ found that Plaintiff's impairments, consisting

                                    2

of mild degenerative osteoarthritis affecting his left knee, moderate degenerative spondylosis at the levels of L2-L4 and C4-C5, and a "probable 'malingered psychiatric illness,'" are "severe," but are not impairments or a combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (A.R. 22.) In addition, the ALJ found that Plaintiff's testimony regarding the degree of his impairments and limitations was not totally credible, stating: "[Plaintiff's] statements concerning his impairments and their impact on his ability to work are not entirely credible in light of [Plaintiff's] own description of his activities and lifestyle, discrepancies between [Plaintiff's] assertions and information contained in the documentary reports, [Plaintiff's] inconsistent demeanor at the hearing, the unsupported reports of the treating practitioners, and the psychological test results indicating probable malingering." (A.R. 22.)

The ALJ found that Plaintiff had the residual functional capacity to perform "light" work, with sitting, standing, and walking up to six hours each in an eight hour workday, but Plaintiff did not have any "severe mental limitations/restrictions."[2]  (A.R. 22.)  Based on this residual functional capacity, the ALJ found that Plaintiff could perform his past work as a mechanic helper.  (*Id*.)

Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.  (A.R. 23.)

_____

[2]    "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. Id. at 1041; see also Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

4

**DISCUSSION**

Plaintiff alleges three issues.  <u>First</u>, Plaintiff contends that the ALJ improperly determined that he had the residual functional capacity to perform "light" work based on the improper rejection of his treating doctors' opinions.  <u>Second</u>, he contends that the ALJ improperly found that he could return to his past relevant work.  <u>Third</u>, he contends that the ALJ did not evaluate properly the testimony he provided regarding his claimed limitations and symptoms.  (Joint Stip. at 6.)  For ease of analysis, the Court addresses the last issue first, and then addresses the issue of whether the opinions of Plaintiff's treating physicians were improperly rejected.

**A.**  **<u>The ALJ's Finding Regarding The Credibility Of Plaintiff's Claimed Symptoms And Limitations Is Affirmed</u>.**

In assessing the credibility of Plaintiff's claimed symptoms and limitations, the ALJ found that Plaintiff was malingering, explaining:

> Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing" <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). In the instant case, there are numerous inconsistencies in the file which diminish [Plaintiff's] overall credibility[,] and consultative psychologist Roger A. Izzi, Ph.D., assessed in August 2003 that, based upon psychological testing and review of the medical evidence in the file,

[Plaintiff] has either:  1) an alcohol-related disorder, not otherwise specified, along with an anxiety disorder, not otherwise specified (Exhibit B11F/5); or 2) a malingered psychiatric illness (Exhibit B11F/6).  Although [Plaintiff] told Dr. Izzi that he consumes 4 to 5 drinks per day of "whatever" (whiskey, vodka, or tequila), Dr. Izzi noted in hindsight that there had been no mention of alcoholism within progress/treating notes by either of [Plaintiff's] treating psychiatrists Doctors Feldman or Taubenfeld). Notwithstanding, [Plaintiff] had also told another consultative examiner (Dr. Lim) that he smokes cigarettes and drinks alcohol.  When questioned at the hearing, [Plaintiff] denied any previous or current problems with alcohol abuse.

Dr. Izzi also noticed that [Plaintiff] had reported one previous suicide attempt to his treating physicians, whereas he alleged two suicide attempts during the current mental status examination.  Perhaps even more significant was Dr. Izzi's observation that [Plaintiff] had scored 17 (with 6 being the cut-off) on the M-FAST test, therefore suggesting the probability of a malingered psychiatric illness.  Although Dr. Izzi provided an assessment of [Plaintiff's] anticipated limitations/restrictions based upon the diagnosed impairments of an alcohol-related disorder and an anxiety disorder, not otherwise specified, in view of [Plaintiff's] testimony at the hearing that he has never had an alcohol-related problem, the inconsistencies noted by Dr. Izzi and throughout the remainder of the record (which will be discussed further infra), in

6

addition to the psychological test results which also suggest

exaggeration of symptoms, the Administrative Law Judge leans

more towards Dr. Izzi's alternative diagnosis of malingering

(Exhibit B11F/6).

(A.R. 19-20.)

In his ultimate finding at the end of his decision regarding Plaintiff's credibility, the ALJ cited as a basis for his conclusions: Plaintiff's description of his activities and lifestyle; discrepancies between his assertions and information contained in written reports; his inconsistent demeanor at the hearing; unsupported reports of treating physicians; and psychological test results indicating probable malingering. (A.R. 22.)

Here, the ALJ provided adequate support for his credibility rejection.[3] In rendering a credibility determination, the ALJ was

---

[3]   Not all of the reasons cited by the ALJ constitute "clear and convincing" reasons supporting his credibility determination. For instance, as discussed *infra*, in Section B, the ALJ improperly rejected the treating physicians' reports. Nonetheless, any such error was harmless because, for the reasons discussed above, the ALJ's credibility finding *was* adequately supported on other grounds. Hence, that finding may be, and is, affirmed. *See* Stout v. Comm'r., Soc. Sec. Admin., 454 F.3d 1050, 1054-55 (9th Cir. 2006)(discussing Ninth Circuit cases applying the harmless error doctrine in the context of Social Security claims); Batson v. Comm'r. of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004)(finding an ALJ error that did not negate the validity of the ALJ's ultimate conclusion to be harmless for, even if the ALJ erroneously characterized the claimant's statements regarding his limitations, in the light of the reasons given by the ALJ for finding the claimant to be not credible and for the RFC found, and the objective medical evidence on which he relied, the error was harmless); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991)(because the ALJ's erroneous factual conclusions were "immaterial" to his ultimate finding of nondisability, the error was harmless).

entitled to, and did, cite significant inconsistencies in Plaintiff's allegations, statements, and testimony that undermined his allegations regarding his physical and mental limitations.  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)(ALJ may reject a claimant's testimony upon: "(1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so"); *see also* Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997)(internal conflicts in claimant's statements are a proper basis for discrediting allegations regarding limitations).

As the ALJ noted, the record reflects several instances of conflicting statements made by Plaintiff regarding his alcohol consumption over a several-year span -- *i.e.*, he stated in the Summer of 2001 that he did not drink alcohol, but then stated several months later that he consumed alcohol; and several years later, at the August 5, 2004 hearing, he stated that he had quit drinking ten months prior to the hearing in October 2003, a date which was only three months after he reported to Dr. Izzi that he was drinking four to five cocktails on a daily basis.[4]  Thus, it was not error for the ALJ to find Plaintiff's explanation at the hearing, *i.e.,* that he simply stopped drinking on his doctor's advice ten months prior to the hearing, to be not plausible. This was a proper ground, and a clear and convincing reason, for finding Plaintiff lacking in credibility.  *See, e.g.,* Thomas v. Barnhart, 278

---

[4]     A.R. 183 -- Dr. Clark Feldman's July 2, 2001 report, noting Plaintiff reported that he did not consume alcohol; 206 -- Dr. Seung Ha Lim's October 23, 2001 report, noting that Plaintiff reported smoking and drinking; 224-25 -- Dr. Izzi's August 30, 2003 report, noting Plaintiff reported that he consumed alcohol, "4-5 whiskey, vodka, tequila, or whatever," on a daily basis; 276 -- Plaintiff's testimony that he stopped drinking ten months before the August 5, 2004 hearing.

F.3d 947, 959 (9th Cir. 2002)(claimant's inconsistent statements about her alcohol and substance abuse supported "the ALJ's negative conclusions about [her] veracity").

In addition, Plaintiff made inconsistent statements regarding his suicide attempts.[5] He made further conflicting statements as to how he injured his arm.[6] In assessing a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," including prior inconsistent statements. Smolen, 80 F.3d at 1284.

Finally, the ALJ cited other reasons, such as Plaintiff's demeanor at the hearing, which constitutes a valid basis for a credibility rejection when coupled with the other evidence supporting his credibility determination. See Morgan, 169 F.3d at 602); see also Thomas, 278 F.3d at 960 (ALJ appropriately based his rejection of the claimant's testimony on her demeanor at the hearing, noting that "she seemed to engage in considerable histrionic exaggeration"); Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)(an ALJ may "disregard self-serving statements made by claimants if it finds them to be incredible on other grounds"); Bunnell v. Sullivan, 947 F.2d 341, 346

---

[5]    A.R. 177 -- Dr. Feldman's December 29, 2001 Mental Disorder Questionnaire Form, noting only one reported suicide attempt 14 months prior; 182 -- Dr. Feldman's July 2, 2001 report, noting one suicide attempt seven months prior; 215 -- Dr. Taubenfeld's December 9 & 13, 2002 report, noting one suicide attempt; 224 -- Dr. Izzi's August 30, 2003 report, noting two past suicide attempts.

[6]    A.R. 144 -- January 5, 1999 report, noting Plaintiff stated that he injured his arm picking up heavy metal; 215 -- Dr. Taubenfeld's December 9 & 13, 2002 report, noting Plaintiff reported that an auto transmission had fallen on his right hand; 223 -- Dr. Izzi's August 30, 2003 report noting, Plaintiff reported becoming injured when a transmission hit him on the right shoulder.

1  (9th Cir. 1991)(ALJ may properly reject a claimant's credibility by

2  using "ordinary techniques of credibility evaluation").

3

4      Accordingly, the ALJ's finding regarding Plaintiff's testimony

5  regarding his claimed symptoms and limitations rests on substantial

6  evidence and will not be disturbed.

7

8  **B.   The ALJ's Residual Functional Capacity Assessment Constitutes**

9      **Error, Because The ALJ Improperly Rejected The Opinions Of**

10     **Plaintiff's Treating Physicians.**

11

12     Ordinarily, the opinions of a treating physician should be given

13 great weight, if not controlling weight. *See* Social Security Ruling 96-

14 2p; *see also* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

15 1989)(opinions of treating physicians are entitled to great deference);

16 Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(treating

17 physician's opinion is given greater weight, because he is employed to

18 cure and has a greater opportunity to know and observe the patient as an

19 individual).  When the ALJ rejects the opinion of a treating physician,

20 even if it is contradicted, the ALJ may reject that opinion only by

21 providing specific and legitimate reasons for doing so, supported by

22 substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830

23 (9th Cir. 1995); *see also* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.

24 1998)(ALJ erred by rejecting the treating doctors' opinions and relying

25 upon Social Security examiners' opinions in finding that claimant's

26 chronic fatigue syndrome had not rendered her disabled).

27

28     In setting forth Plaintiff's physical limitations, the ALJ reasoned

10

as follows:

> Based on the opinion of Dr. Siciarz,[7] the Administrative Law
> Judge finds that [Plaintiff's] impairments are severe enough to
> limit him to the performance of, at most, light work (or work
> requiring lifting/carrying/pushing/pulling up to 20 pounds
> occasionally and 10 pounds frequently with sitting, standing, and
> walking up to 6 hours each in an 8-hour workday).  These
> limitations/restrictions are consistent with a residual functional
> capacity for, at most, light work.

(A.R. 21.)

In discussing the records regarding Plaintiff's physical impairments, the ALJ rejected the opinions of Dr. Levon Antossyan, Plaintiff's treating doctor, stating:

> Whereas Dr. Antossyan assessed that [Plaintiff's]
> impairments would preclude him from sustaining even a
> sedentary level of work activity 8 hours per day, 5 days per
> week, as required by Social Security Ruling 96-8p (Exhibit
> B3F/3, B5F, and B12F), the Administrative Law Judge rejects
> his opinions inasmuch as the progress/treating notes from Dr.
> Antossyan consist primarily of [Plaintiff's] subjective
> complaints and a laundry list of symptoms/abnormalities

---

[7]   The ALJ mistakenly identified this physician as Dr. Siciarz; the record reflects that he was relying upon the October 23, 2001 opinion of Dr. Lim.  (A.R. 208-09.)

circled within a list.  The only objective/diagnostic tests contained within those notes were all performed at the beginning of [Plaintiff's] treatment with Dr. Antossyan on June 16, 2001 and reveal only elevated glucose/cholesterol levels, moderate degenerative spondylosis of the cervical and lumbosacral spines, left axis deviation on electrocardiogram testing, and mild degenerative osteoarthritis of the left knee (Exhibits B3F/4-7, B12/26-31).  Those findings, for the most part, were already mentioned within the previous paragraph and considered by Dr. Siciarz.  Moreover, Dr. Antossyan does not provide any explanation with respect to the relationship between the abnormalities circled and the diagnoses assessed, the changes in the diagnoses listed from one month to the next, the different modalities of treatment attempted, and/or the limitations assessed/restrictions imposed as a result of those impairments.  He also does not specify the degree of limitation of motion of [Plaintiff's] back or neck in terms of degrees on repeated examinations.  There are also inconsistencies when comparing the findings and the diagnoses. For example, Dr. Antossyan reported a normal examination of the extremities on clinical examination in January 2002; yet, he diagnosed weakness affecting the right hand status post tear of the tendon (Exhibit B12F/23).  At other times when he notes cyanosis and edema affecting the extremities (positive clinical findings), he doesn't list any diagnoses pertaining to the right upper extremity E(Exhibit 12F/21).  When [Plaintiff] was allegedly very depressed and crying, there were no adjustments made to [Plaintiff's] dosage of

12

antidepressant and anti-anxiety medications.  The overall lack of support for the diagnoses and limitations/restrictions set forth within Dr. Antossyan's progress/treating notes, the lack of evidence of adjustments in treatment related to the results of the clinical examinations, and the overall frequency of inconsistencies within the progress/treating notes, as mentioned above, all diminish the overall credibility of Dr. Antossyan's opinions (Exhibits B3F, B5F, and B12F).  For these reasons, the Administrative Law Judge attaches greater weight to the opinion of Dr. Siciarz concerning [Plaintiff's] physical impairment-related limitations/restrictions.

(A.R. 21.)

In describing the evidence with respect to Plaintiff's mental limitations, the ALJ stated:

. . .[I]t should also be pointed out that, unlike Dr. Izzi who noted multiple discrepancies in reports, both of [Plaintiff's] treating psychiatrists (Doctors Feldman and Taubenfeld; see Exhibits B4F and B10F) appear to have taken [Plaintiff's] word for the alleged severity of his symptoms and impairments without comparison of the different stories [Plaintiff] has told to his various physicians of record.  For example, [Plaintiff] told physicians at Northridge Hospital in January 1999 that he was picking up heavy metal at work when he experienced sudden pain in the front of his right upper arm (Exhibit B1F/7).  In contrast, [Plaintiff] told Dr. Taubenfeld

13

in December 2002 that his injuries were sustained as the result of a transmission falling on his right hand (Exhibit B10F/2). Yet another report mentions that [Plaintiff] was swinging a hammer when he developed severe pain in his right arm and neck. Dr. Taubenfeld's report is also internally inconsistent. Whereas the second page of that report reflects that [Plaintiff] lives alone inasmuch as his wife left in him 2001 due to the financial difficulties experienced after [Plaintiff] sustained injuries and lost his job, Dr. Taubenfeld then reports that [Plaintiff] was fearful during the interview and that his wife had therefore explained that [Plaintiff] is afraid of the dark and occasionally talks about Iranian operatives who are following him (Exhibit B10F/5). Inasmuch as the opinion of Dr. Izzi concerning [Plaintiff's] probable malingered psychiatric illness is objectively supported by psychological test results and based upon both an independent evaluation and review/comparison of the findings set forth within the reports of the treating physicians, the Administrative Law Judge attaches greater weight to the opinion of Dr. Izzi than to the opinions of Doctors Feldman and Taubenfeld with respect to [Plaintiff's] alleged mental impairments and associated limitations/ restrictions (20 CFR 404.1527 and 20 CFR 416.927). Considering alcoholism as a potential problem, Dr. Izzi assessed moderate limitations/restrictions in multiple areas. Since the record adequately establishes that [Plaintiff] does not have a severe alcohol problem, however, the Administrative Law Judge finds that [Plaintiff's] malingered psychiatric illness does not

14

impose any limitations/restrictions upon his ability to perform basic activities of daily living, social functioning, or in his ability to maintain adequate levels of concentration, persistence, and pace. Moreover, there is no evidence of any episodes of deterioration or decompensation in a work or work-like setting related to a medically determinable mental impairment.

(A.R. 19-20.)

Plaintiff contends that the records from his treating physicians (Dr. Antossyan, Dr. Taubenfeld, and Dr. Feldman) indicated that he suffered from a combination of physical and mental impairments, which limited him from engaging in work at any level, much less work at the "light" exertional level, as the ALJ found. (Joint Stip. at 13.)

With respect to the ALJ's finding regarding Plaintiff's physical limitations, a review of the record shows that the ALJ's assertion that there is a lack of objective support for the findings of Dr. Antossyan is plainly wrong.[8] Dr. Antossyan's failure to describe the extent of the limitation in Plaintiff's range of motion does not render Dr. Antossyan's notations of such limitations null, such that they no longer

---

[8]     A.R. 152 -- January 4, 1999 abnormal ECG; 154 -- June 16, 1999 pathology report, indicating olecranon bursa in the right elbow consistent with dense reactive fibrosis and chronic inflammation; 167 -- borderline abnormal ECG; 168 -- June 16, 2001 x-ray, indicating mild degenerative osteoarthritis of the left knee; 173 -- June 16, 2001 x-ray of the cervical spine, indicating moderate degenerative spondylosis and disc disease at C4-C5; 233 -- March 11, 2004 x-ray of the cervical spine, indicating moderate degenerative spondylosis and disc disease at C4-C7 and x-ray of the lumbar spine, indicating moderate degeneration spondylosis and disc disease at L1 through L5.

15

constitute objective bases for his findings.  In view of the objective evidence supporting Dr. Antossyan's findings, the ALJ's conclusion that Dr. Antossyan's observations were based solely upon Plaintiff's subjective complaints constitutes error.  *See* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion); *see also* Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989)(citing Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988))("Merely to state that a medical opinion is not supported by enough objective findings 'does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.'").

Moreover, the "inconsistencies" in the treating physicians' reports which the ALJ cites are better characterized as ambiguities when examined closely.  For instance, while Dr. Antossyan did not render any diagnosis with respect to Plaintiff's upper extremities in some of his treatment notes, he did note in certain records that Plaintiff had edema and cyanosis in his upper extremities.  It appears possible that these could be ancillary symptoms resulting from Plaintiff's neck and back impairments.  Thus, to the extent the ALJ suggests that Dr. Antossyan's findings are "inconsistent" because he should have made additional and/or other findings or diagnoses and/or provided other treatment (*e.g.*, increased anti-depressant medication for elevated emotions), the ALJ appears to be rendering his own medical judgment, which is improper. *See* Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)(the ALJ's substitution of his own medical judgment in interpreting medical records constitutes error).  In addition, Dr. Antossyan's treatment notes contain handwritten notations, some of which are not legible, that may

provide further insight and/or support for his diagnoses.

Further, although the findings of Plaintiff's treating physicians regarding his mental impairment may have been largely premised on his statements and observed behavior, it was improper to disregard them wholly based on Dr. Izzi's report, which indicated that Plaintiff was malingering.[9]  *See also, e.g.*, <u>Embrey</u>, 849 F.2d at 422 (Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments).  The several-year span of treating records demonstrates that Plaintiff exhibited serious mental health symptoms, such as suicidal behavior, social withdrawal, anxiety, insomnia, paranoia, and crying spells, which were treated with various anti-depressant medications.[10]

---

[9]    As one court has observed:

Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by technical devices in order to obtain objective clinical manifestations of mental illness. . . .  [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

<u>Christensen v. Bowen</u>, 633 F. Supp. 1214, 1220-21 (N. D. Cal. 1986).

[10]    A.R. 176 -- Dr. Feldman's December 22, 2001 report, indicating that Plaintiff has daily anxiety attacks, insomnia, and crying spells, and exhibited cognitive deficits, and was switched from Paxil to Serzone and Remeron at bedtime; 182-85 -- Dr. Feldman's July 2, 2001 report, indicating that:  Plaintiff reported a suicide attempt, was taking

17

1   Despite Dr. Izzi's testing, which indicated that Plaintiff was

2   malingering, psychological testing performed by other physicians

3   revealed positive signs of decreased intellectual functioning, memory

4   loss, and poor judgment, as well as a mild organic impairment.  In

5   addition to Plaintiff's own statements and testimony, these symptoms are

6   described by Hamlet Azizian, his son, in a September 15, 2001 Daily

7   Activities Questionnaire.  (A.R. 106-10.)  The conclusion of Dr. Izzi,

8   a one-time consultative examiner (*i.e.*, because Plaintiff appeared to be

9   malingering at his examination, he likely was malingering over the past

---

11   Paxil, displayed "significant psychomotor retardation," was able "to
12   complete only ½ stage of a simple 3-stage command," and reported extreme
    depression, excessive anxiety with occasional anxiety attacks, crying
13   spells on a nearly daily basis; diagnosing Plaintiff with major
    depression and assessing him with a Global Assessment of Functioning
14   score ("GAF") of 44 (indicative of serious symptoms); noting
    "[Plaintiff] is extremely depressed with significant neurovegetative
15   signs, suggesting the presence of a neurochemical dysfunction"; and
    finding "[Plaintiff] also demonstrates significant impairments in his
16   concentration and memory functioning affecting all times spheres, but
    most prominent with regard to his immediate recall, recent and
17   intermediate memory" and "demonstrates poor calculations, judgment,
    executive functioning and performance on neuropsychiatric testing"; 214-
18   20 -- Dr. Taubenfeld's December 9 & 13, 2002 report, indicating that
    eight different tests were administered in order to assess and diagnose
19   Plaintiff; noting deficits in recent memory, poor visual memory, poor
    concentration, difficulties with complex problems, and a mild organic
20   impairment; indicating that Plaintiff displayed moderate levels of
    paranoid thought; noting cognitive deficits; diagnosing Plaintiff with
21   major depression and posttraumatic stress disorder, as well as
    fearfulness and anxiety; noting that Plaintiff "would have a great deal
22   of difficulty working in any position where there is human contact" and
    "is unlikely to adapt to work or work-like situations"; and assessing
23   him with a GAF of 45; 165 -- September 13, 2001 treating note,
    diagnosing depression, as well as other physical problems.

24       The treatment notes of the physicians who treated Plaintiff
25   for his physical problems also contain diagnoses of depression.  (A.R.
    234 -- February 12, 2004 treatment note; 236 -- November 11, 2003
26   treatment note; 237 -- October 3, 2003 treatment note; 240 -- May 14,
    2003 treatment note; 241 -- April 11, 2003 treatment note; 243 --
27   February 6, 2003 treatment note; 244 -- December 17, 2002 treatment
    note; 248 -- July 10, 2002 treatment note; 249 -- June 7, 2002 treatment
28   note; 250 -- May 15, 2002 treatment note; 255 -- July 14, 2001 treatment
    note.)

few years with regard to his professed mental impairments) does not appear to be supported by substantial evidence.  *See, e.g.*, <u>Lester</u>, 81 F.3d at 832 (ALJ erred in rejecting the opinions of claimant's treating doctors regarding the claimant's mental impairment, noting that "the similarity of their conclusions provides reason to credit their opinions.")

Thus, a finding that Plaintiff has no "severe" mental illness and attendant limitations is not supported by the record.  In view of the significance of Plaintiff's mental health symptoms, as observed by Plaintiff's treating physicians and Plaintiff's son, and the *de minimis* threshold for a Step Two finding,[11] the ALJ's finding Plaintiff had no "severe" mental impairment or mental limitations during the period at issue constitutes error.  On remand, before re-evaluating the evidence and determining Plaintiff's residual functional capacity, the ALJ should seek to clarify the ambiguities in the records of Plaintiff's treating

---

[11]   "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" <u>Smolen</u>, 80 F.3d at 1290 (citing Social Security Ruling 85-28 and <u>Yuckert v. Bowen</u>, 841 F.2d 303 (9th Cir. 1988)); 20 C.F.R. § 416.921 ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also* <u>Bustamante v. Massanari</u>, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not severe was not supported by substantial evidence because every mental health professional who examined claimant found significant mental problems).  The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing <u>Smolen</u>, 80 F.3d at 1290).  "[A] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*."  Social Security Ruling 85-28 (emphasis added).

1  physicians.[12]

2

3      Accordingly, because the ALJ's rejection of Plaintiff's treating

4  physicians is not based on substantial evidence, his residual functional

5  capacity finding constitutes error.

6

7  **C.   Remand Is Required.**

8

9      Here, remand is appropriate to allow the ALJ the opportunity to

10 develop the record and correct the above errors.  *See, e.g.,* <u>Benecke v.</u>

11 <u>Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by

12 discounting  treating  physicians'  opinions,  remand  for  further

13 proceedings is appropriate if enhancement of the record would be

14 useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir.

15 1989)(remand appropriate to remedy defects in the record).

16

17                          **CONCLUSION**

18

19     Accordingly, for the reasons stated above, the denial of benefits

20 is REVERSED, and this case is REMANDED for further proceedings

21 consistent with this Memorandum Opinion and Order.  Judgment shall be

22

23      [12]   *See* <u>Brown v. Heckler</u>, 713 F.2d 441, 442-43 (9th Cir.
   1993)(Commissioner has an affirmative duty to develop the record, even
24 if the claimant is represented by counsel); 20 C.F.R. §§ 404.1512(e),
   416.912(e)(duty to re-contact treating physician); <u>Thomas</u>, 278 F.3d at
25 956-57, 959 (requirement in 20 C.F.R. §§ 404.1512(e), 416.912(e) that
   the Commissioner re-contact treating sources is triggered where the
26 information  from  the  treating  sources  is  inadequate  to  make  a
   determination regarding disability); *see also* 20 C.F.R. §§ 404.1519a(b),
27 416.919a(b)(listing situations requiring a consultative examination,
   such as a conflict, inconsistency, ambiguity or insufficiency in the
28 evidence).

entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 23, 2007

_____
/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

21